Thank you. Good morning. May it please the Court. I am Michael Carrozzo representing the petitioner in this case. Your Honors, there are three distinct and separate issues involved in this petition, which I'd like to go into briefly of each of the three. There is the denial of the suspension of deportation, which was pre-permitted. There is the denial of the asylum application. And then there's the additional argument that we've raised regarding the adjustment of status application and the marriage, and the denial of that petition based on 204C. Well, on the marriage issue, that was never raised at the BIA, was it? And no I-130 was ever filed? It was raised in a separate appeal with the BIA, and a new I-130 petition is currently pending. Okay, but that's not in this case. That's right. All right. So we don't have to tarry very long on that argument. Why don't you go back to your others? Thank you, Your Honor. Regarding the suspension case claim, the petitioner in this case filed the suspension application on October 20, 1995. That was before the passage of IRAIRA, before the passage of NACARA, and there was no stop-time rule at the time that it was filed. He submitted with that evidence of his claim for suspension. Now, what had happened was this case initially was heard on the first hearing, which was June 22, 1994, and it wasn't heard again until September 2, 1998, over four years later. And there was nothing on the record on the transcripts between 94 and 98. And basically what had happened is that the petitioner is waiting for the INS to adjudicate his marriage petition, which he filed on July 1, 1996. The Immigration Service did not make a ruling on that petition until August 26, 1998. Now, isn't the rule that if it's filed pre-September 30, 1996 and the decision is issued by the I.J. after April 1, 1997, that IRAIRA applies? Isn't that right? Well, I believe that no, I don't believe that IRAIRA applies. I believe that with the modification of NACARA, the courts have concluded that IRAIRA modified by NACARA triggered the stop-time rule. But in and of itself, I believe that the cases that I have cited, including Jimenez-Angeles and you've got to go back to those dates. But at least you agree with respect to those dates. I mean, you've got to. Yes. All right.   I do, Your Honor. But what's different in this case is, you know, the time that transpires between when he was eligible in 95 until the hearing in 98. There's three years where he's eligible for the suspension case. And at least up until April 1, 1997, he's eligible for, that's roughly almost two years, that he's eligible for suspension and his case doesn't get heard. The reason why his case doesn't get heard is because the INS has not adjudicated the other petition that he's waiting for. It turns out they deny it, but it's unadjudicated for this long period of time. And what it does is it precludes him from being able to apply for his suspension case. And what this shows, I think, more importantly, is the problem with retroactive laws. When you make these laws retroactive and go back in time, it makes it difficult for the INS to decide what to do. At the time, it makes it difficult for the attorney to decide what to do, because you don't know that a law a year later is going to have an effect retroactively in this case. What's your argument? Are you asking us to hold a statute unconstitutional? Well, I think that's going to be very difficult. And that is That's not in your brief. You haven't asked us to do so in your brief. What's this argument getting us as far as what we have to decide today? It's getting us this. There's a case, the Ninth Circuit case, Octorolo, which basically finds that a delay by the INS allows the petitioner to have eligibility to have his suspension claim heard. So, in other words, he could have had this heard in 95, in 96, or any time in April of 97, and he didn't, because the INS didn't process his other petitioner he was waiting for. Now That's a little different case than this one, when we have the statute intervening, telling us what to do. How does it apply there? Which statute, Your Honor? When they pass the IRA statute. Oh. Well, I think the problem with the statutory construction is this. You have two separate statutes, IRA-IRA and NACARA. IRA-IRA is found to not apply retroactive, based on Estero, based on St. Cyr. IRA-IRA is not retroactive. However, later cases have found that NACARA piggybacks on to IRA-IRA and then makes it retroactive. So it's really a retro-retro reactivity. And I think that's my constitutional argument. But I think that that's a difficult argument to proceed with. Counsel, what was the name of that case that you just quoted? It's spelled O-T-A-R-O-L-A-V-I-N-S-270-Fed3-1272. I'm looking for it in your list of cases. It's not cited, Your Honor. That's the case that I unquote. You haven't cited it? No, Your Honor. In your brief? No, Your Honor. Has counsel cited it in her brief? No, Your Honor. May I suggest that you have an obligation to at least disclose that to us and comply with our court rules which require that you serve on opposing counsel and the court the citation to a matter that you want to raise, an oral argument that wasn't in your brief? Yes, Your Honor. I apologize. And you might also comply with the rules when you set up statement of issues in your brief that you adhere to them in your oral argument. You've made a lot of new issues here which were not included in your brief at all. I apologize for that, Your Honor. One other point that I want to make, which is addressed in part in my briefs, is the issue of the repapering element of NACARA. And as the Court's aware, the government, to its credit, decided that this process of finding people ineligible retroactively wasn't fair. So they put in a provision that allows people to apply for the cancellation, the new element triggered by IORIRA, for certain people. And those are people who did file for suspension, were found ineligible, but have now met the tenure requirement and are now eligible. And this is called repapering. In our case, the petitioner wasn't afforded that opportunity because the regulations for that were not filed and not complied with, not developed, even though NACARA had passed. It was provided in NACARA as 309C. They weren't placed into a regulation until November 30, 2000. So in other words, what I'm trying to say is that this person fell through the cracks. He wasn't allowed to comply with his suspension because the stop time rule stopped him, and he wasn't allowed to apply for cancellation because the regulations hadn't been promulgated, although the law had been. The provision that allows the repapering was provided for in NACARA. So that's the summation of my argument. I do want to touch on the asylum briefly, and that is simply that there was enough evidence presented through testimony that the Respondent did suffer and has a credible fear, subjective fear, and it was reasonable based on the current State Department reports regarding the country petitions in the Philippines. And I do apologize, Your Honors, for improperly citing that case. It was something that I was unaware of and had recently, so I apologize. And I'll reserve the rest of my time. Thank you. Roberts. You have some reserved time. Ms. Lightbody. You may proceed. May it please the Court. My name is Jennifer Lightbody, and I represent the Respondent. The record evidence in this case does not compel the conclusion that Petitioner is entitled to a grant of asylum or withholding. Furthermore, the IJ properly pretermitted his application for suspension of deportation, and as this Court has already indicated, there is no issue with respect to the adjustment of status because he has waived that issue. What about the IRIRA issue? What's the government's position with respect to whether IRIRA applies? With respect to the suspension of deportation? Well, the argument he's making is that either because of NACARA or otherwise, that IRIRA should not be applied to this case. In other words, it was pre-'96, and subsequent Ninth Circuit cases he infers suggest that the basic rule should not apply. In other words, that this should not be an IRIRA case. What's your response? Well, first of all, Your Honor, I'm not familiar with the case that he cited. Of course, he hasn't. It wasn't cited in his brief, and I would be happy to supplement our brief if the Court desires. Why the government thinks this is an IRIRA case? Because both in the Court's decision in Ram and Estrera, which are both cited in the government's brief, the stop-time rule is properly applied where here the petitioner was placed in deportation proceedings, and as he didn't indicate to this Court, but the reason for the delay, which is cited at page 24 of the respondent's brief, the reason for the delay in the immigration judge making a decision in this case is because he sought three continuances. I mean, the petitioner delayed the immigration judge's decision, and that's what put him past the April 1, 1997, effective date of IRIRA. And so when the immigration judge rendered his decision on September 2, 1998, IRIRA already was in effect, and the immigration judge properly applied the stop-time rule. This Court in both Estrera and Ram supports the immigration judge's decision. Moreover, Judge Scanlon, I believe in the case that is cited by the petitioner in his brief to support, which was, I believe, Guadalupe Cruz, you dissented in that case, indicating that the Court was to look at the Board's decision, and the Board's decision had been issued after the effective date of IRIRA, and that in looking at the Board's decision, they were absolutely obligated to impose the stop-time rule. This case is no different. Well, I'm flattered that you cite a dissent of mine, but it may not be the law of the circuit. But I understand that, Your Honor. But I believe that, again, Estrera and Ram support the government's position that the immigration judge properly applied the stop-time rule in this case. And, again, the reason for the delay between the filing of his application for suspension in 1995 and the immigration judge's decision was because the petitioner sought continuances. And we cite in page 24, and actually 25 of our brief, that proposition, and also the record cites to where he sought the continuances. And a couple of other things that he has raised, actually, in his reply brief. Number one, he submitted to this Court, with respect to the asylum claim, the 2001 country condition reports, and the government would move to strike those reports. Those were not in evidence before the Board and this Court. Clearly can't consider those under the law, 8 U.S.C. 1105. The Court's review is confined to the record in this case, and those were not part of the record. He also contends that he is eligible for relief under Barahona. That was not raised below. Even so, it's the government's position that he is not actually Barahona eligible. And the reason for that is that that's a settlement agreement that has been entered into in California. I'm not sure if it's the Central District of California or the Northern District, but in any event. And it's the Northern District. Thank you, Your Honor. In that settlement agreement, there are specific provisions. And in any event, if he believes that he is a member of that, it's not appropriate for this Court to remand. What he would have to do is go and seek, pursuant to the settlement agreement, he would have to go before the Board and seek reopening. And so this Court can't remand for the purposes of enforcing a settlement agreement. So I just wanted to point those things out in his reply brief. But with respect, going back to his asylum claim. Well, he wants to remand it to the BIA to consider the settlement agreement. Your position is we have no jurisdiction to do that. He has to move to reopen. That's correct. But the settlement agreement in Barahona actually contemplates this exact situation. And it states that there are, I believe, three ways in which he can do that. One is to seek a sua sponte reopening. The other one is the alien can seek reopening, and there's also some type of dispute resolution. Is there something that's prevented him if he really believes he's entitled to file to reopen now or earlier? Well, I would submit to this Court. Again, I know this wasn't raised before. I actually spoke to the attorney in our office this morning who handled Barahona litigation, and he advised me that this Petitioner is not eligible. There's a provision in the settlement agreement. Sorry, Petitioner is not eligible. There is a provision in the settlement agreement with respect to aliens who have sought continuances as Petitioner has. My question really is, is he prevented from filing a motion to reopen because he's here in this Court on appeal? No, he can file the motion to reopen. The month before. I'm sorry? He could have done it last month or the month before. You're asking me the timing of when he was to do that? There's no reason to wait for our opinion for him to file. Correct. I'm sorry. Yes, that's correct, Your Honor. And it wouldn't be appropriate for this Court to remand it. He's got remedies there. With respect to his asylum claim, as our brief establishes, there is no past persecution and no well-founded fear of persecution based on the 1997 country condition reports relied on by the immigration judge, which show that the NPA is just not the force that it was back in, I believe, 1976, when his father had the first interaction with the NPA. But these were unsubstantiated threats that he actually said he was wealthy enough to protect himself, and he didn't fear the NPA because he had bodyguards or security. And that goes directly to the heart of his asylum claim. And he does cite about six different propositions for why there isn't substantial evidence in the case. And quickly, he said that his political opinion is opposite to the NPA. Well, there's absolutely no evidence in the record that the NPA knew his political position. He said his father died suspiciously, but then there's absolutely no evidence in the record to suggest that his father died as a result of something that the NPA did. And similarly, he says his brother was stabbed and his nephew was shot after threats from the NPA. That is absolutely not in the record. He suspected that his nephew was shot because he was a businessman, and it may have been related to the NPA, but he had no proof of that. And he specifically testified in the record that he didn't know the reason why his brother was stabbed. He was stabbed in a park at night, and there's absolutely no evidence to suggest that that's the NPA that did that. He said, in addition, the NPA was searching for him. I didn't find any evidence in the record that the NPA was searching for him, and he said that the military wouldn't provide any or the police wouldn't provide any assistance. Well, he specifically testified that he didn't ask for assistance from the government to protect him from these alleged threats from the NPA. So in sum, the record evidence does not compel the conclusion that the petitioner is entitled to asylum. The immigration judge properly determined that he did not establish past persecution on account of one of the protected grounds, and he had no well-founded fear of future persecution based on the 1997 reports. For the reasons set forth in our brief and for the reasons set forth today, we would ask that the Court affirm the Board's decision. Thank you, counsel. Mr. Caruso, you have a little bit of time. Thank you, Your Honor. I just wanted to point out, in regard to the continuances, yes, that's right. The prior attorney requested continuances. And again, that points out why retroactive laws are so difficult. We can't charge this. We can't say this attorney was ineffective. He was doing what he knew at the time, what he thought was his best opportunity to get this case approved. Well, the law changes after the fact, after he's requested these continuances, and now he's out. So it's not a fault of the attorney. It's fault of the law going retroactive and denying this person the opportunity to apply for this relief. And under that circumstance, what powers do we have at this point to do anything about that? Great, Your Honor. I'm glad that you mentioned that because I think it will redeem my – I'll redeem myself a little bit on citing the improper case. I did cite Castillo-Perez in my brief, and it basically – it was putting forth the idea that I put forth today. And that is, in that case, there was ineffective assistance of counsel. The attorney didn't file the suspension case on time. When it was late, when he – and then he was precluded because of the stop. Okay, but you're not arguing ineffective assistance here. I'm not. I'm not. But what I'm saying is that that's the – that there is relief in the sense that if there's – if there's a claim that there was some reason that he was precluded that wasn't his fault, then the court can remand the matter back to have a hearing on the suspension case.    It is a case that was delayed, and that's because it's not ineffective assistance of counsel, which is the argument that I made. The case that I cited to the Court today is just a better case for my position because it's not ineffective assistance of counsel. It's that the INS delayed the decision. And which is exactly on point with what we're here with today, is that the only reason that the attorney wanted continuances is he wanted to get the decision on the marriage case, and it took two years to get it. So that's the analysis. Counsel, if you want us to look at that case that you mentioned, be sure and comply with the court rules. Yes, Your Honor. Which you can still do. We'll let you do that. Thank you, Your Honor. But be sure you serve that. I will do that. The case just argued will be submitted for decision.
judges: Wallace, Hall, O'Scannlain